# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARK SHOECRAFT,

                    Petitioner,           :    Case No. 3:19-cv-261

      - vs -                        District Judge Thomas M. Rose
                                         Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                       :
                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

Petitioner Mark Shoecraft brought this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254 to obtain release from his conviction in the Common Pleas Court of Montgomery County, Ohio, on charges of murder, improper discharge of a firearm, felonious assault, carrying a concealed weapon, aggravated trafficking in drugs, and having a weapon while under a disability (Petition, ECF No. 1, PageID 35).

Upon transfer of this case from the Cincinnati location of Court, the undersigned ordered Respondent to file a Return of Writ and the State Court Record which was completed October 31, 2019 (ECF No. 7, 8). The Court then reminded Petitioner that his Reply to the Return was due to be filed by November 21, 2019 (Notice, ECF No. 9). Petitioner's time to reply, as twice extended, expired on January 2, 2020 (ECF No. 13). Shoecraft actually waited until January 6, 2020, to file his Reply (ECF No. 14, PageID 898) and did not obtain a further extension. Because the Reply was untimely filed, Shoecraft is not entitled to have it considered by the Court. In the interest of

completeness, however, this Report reflects consideration of the Reply in the event the District Judge does not decide to strike it.

**Litigation History**

Shoecraft was indicted by a Montgomery County grand jury on February 13, 2017, in connection with the fatal shooting of Eric Raglin on the evening of January 31, 2017 (Indictment, State Court Record, ECF No. 7, PageID 69-70). Shoecraft waived trial by jury and the trial judge convicted him on all counts except for the charge of trafficking in cocaine. After merging some of the convictions under Ohio Revised Code § 2941.25, the trial judge sentenced Shoecraft to an aggregate sentence of forty years to life imprisonment.

Shoecraft appealed raising five assignments of error, and the Ohio Second District Court of Appeals affirmed the convictions, *State v. Shoecraft,* 2018-Ohio-3920 (Ohio App. 2d Dist. Sep. 28, 2018). The Second District granted Shoecraft leave to file a delayed application for reconsideration, but then denied substantive relief. Shoecraft sought and received permission to file a delayed appeal to the Supreme Court of Ohio, but the delayed appeal was dismissed for want of prosecution. *State v. Shoecraft,* 156 Ohio St. 3d 1411 (2019).

On February 21, 2019, Shoecraft filed an Application for Reopening under Ohio R. App. P. 26(B), claiming his appellate attorney was ineffective for failing to claim his trial attorney was ineffective for not presenting a cultural expert. The Second District denied reopening and the supreme court declined appellate jurisdiction. *State v. Shoecraft,* 156 Ohio St. 3d 1455 (2019).

Prior to that, Shoecraft filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, which was denied in August 2019. Petitioner took no appeal, but filed the instant habeas corpus petition August 19, 2019, pleading the following grounds for relief:

**Ground One**: Petitioner did not voluntarily waive his right to a jury trial in violation of his 5th, 6th, and 14th Amendment rights.

**Supporting Facts:** Petitioner submits that the records establishes [sic] that he did not waive his rights to a jury trial in a knowing, intelligent, and voluntary fashion, as petitioner was not sufficiently appraised [sic] of how his guilt could be decided.

**Ground Two**: The trial court erred by rejecting petitioner's affirmative defense of self-defense and defense of another, violating the 5th & 14th Amendments.

**Supporting Facts:** The records establishes [sic] that, at the time Raglin (victim) attempted to drive away with the drugs without paying, petitioner and his friend Glenn were standing along the driver's side of the car, petitioner argued at trial that he believed he and Glenn were in danger, and based upon Raglin's actions, petitioner was legally justified in shooting in self-defense.

**Ground Three**: The trial court erred in rejecting voluntary manslaughter an inferior degree of murder, violating the 5th, 14th, Amendment.

**Supporting Facts:** Petitioner submits that there was more than sufficient provocation to bring extreme stress involved in this case, and it was the trial court judge's ignorance of petitioner's race and environment that kept the judge/trier of fact from seeing the justification in the petitioner's actions.

**Ground Four**: The trial court committed plain error in sentencing petitioner on allied offenses.

**Ground Five**: The petitioner's conviction on the charge of felonious assault against Ms. Houchins was against both the sufficiency of the evidence, and against the manifest weight of the evidence, violating the 5th and 14th Amendments.

**Supporting Facts:** Petitioner had absolutely no intent to harm Ms. Houchins, and there was not testimony produced that suggested petitioner did, what could have happened in hind-sight and what did is completely different.

**Ground Six**: Petitioner was denied effective assistance of trial counsel in violation of his Sixth Amendment where counsel failed to request a cultural expert.

> **Supporting Facts**: Because of the cultural differences between the judge and the parties involved, counsel was required to bring forth a witness in mitigation of sentence, and to aid the defense in establishing why petitioner felt threatened enough to shoot when a white surbanian [sic] might not.

(Petition, ECF No. 4, PageID 39-45.)

# Analysis

## Ground One: Involuntary Waiver of Jury Trial

In his First Ground for Relief, Shoecraft claims his waiver of trial by jury was involuntary "because petitioner was not sufficiently appraised [sic] of how his guilt could be decided." Shoecraft raised this as his first assignment of error on direct appeal and the Second District decided it on the merits, concluding that the requirements for a valid jury waiver contained in Ohio Revised Code § 2945.05 and Ohio R. Crim. P. 23(A) were satisfied.

Shoecraft argued his first assignment of error under both Ohio and federal law, specifically citing the Sixth Amendment to the United States Constitution and *United States v. Martin*, 704 F.2d 267 (6th Cir. 1983). The aspects of trial by jury of which he claims he was not sufficiently apprised are that with a trial by a jury, his guilt or innocence would be determined by twelve jurors who would have to decide unanimously that he was guilty, and that he could participate in the jury selection process (Appellant's Brief, State Court Record, ECF No. 7, PageID 115). He admits he was told that all issues in the case would be tried and decided by a judge. *Id.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is

contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002);

*Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. §

2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceedings. Although the Second District

discussed this assignment of error in terms of the relevant Ohio statute and criminal rule, the

federal question was presented to them and their opinion should be read to have decided that

question.

A state court decision can constitute an "adjudication on the merits" entitled to deference

under 28 U. S.C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim

or to relevant federal case law. In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court

held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on
> the merits" in state court, subject only to the exceptions in §§
> 2254(d)(1) and (d)(2). There is no text in the statute requiring a
> statement of reasons. The statute refers only to a "decision," which
> resulted from an "adjudication." As every Court of Appeals to
> consider the issue has recognized, determining whether a state
> court's decision resulted from an unreasonable legal or factual
> conclusion does not require that there be an opinion from the state
> court explaining the state court's reasoning. *See Chadwick v.
> Janecka*, 312 F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary
> for Dept. of Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002);
> *Sellan v. Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v.
> Jarvis*, 236 F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v.
> Stovall,* 212 F.3d 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle,* 196
> F.3d 1174, 1177-1178 (CA10 1999); *James v. Bowersox*, 187 F.3d
> 866, 869 (CA8 1999). And as this Court has observed, a state court
> need not cite or even be aware of our cases under § 2254(d). *Early
> v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per
> curiam). Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Id.* at 784.

The Ohio statute and Criminal Rule considered by the Second District are designed to protect the right to trial by jury which is recognized by both the Ohio and United States Constitutions.[1] Furthermore, the Ohio courts applied the federal standard for waiver of a constitutional right, to wit, that it must be knowing, intelligent, and voluntary. *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). Common Pleas Judge Dennis Adkins expressly found that Shoecraft's waiver was knowing, intelligent, and voluntary.

The only federal case law cited on appeal was *Martin, supra*, which held that knowledge of certain aspects of trial by jury is enough to make a waiver intelligent, but did not hold that lack of knowledge of those aspects would render the waiver unintelligent. It did hold that a technical knowledge of the jury trial right was not required. 704 F.2d at 273. In any event, *Martin* is not a decision of the United States Supreme Court and we are authorized to grant habeas relief only when a state court decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The Second District's decision is therefore entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")).

Apart from its failure on the merits, Shoecraft's First Ground for Relief is also barred by

---

[1] The Ohio right is slightly more liberal, providing trial by jury for all criminal cases except minor misdemeanors. The federal right in the Sixth Amendment provides trial by jury for all serious offenses, i.e., those with a possible sentence in excess of six months imprisonment. *Blanton v. City of North Las Vegas,* 489 U.S. 538, 544 (1989); *United States v. Nachtigal,* 507 U.S. 1, 3-4 (1993). The Due Process Clause of the Fourteenth Amendment incorporates the Sixth Amendment guarantee of trial by jury for serious offenses. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

his procedural default in presenting it to the Ohio courts. Although granted leave to file a delayed appeal in the Supreme Court of Ohio, he failed to file the required memorandum in support of jurisdiction and the case was dismissed for want of prosecution.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first

7

instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

Failure to properly present a claim to a state supreme court on discretionary review constitutes a procedural default. *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-47(1999).

Shoecraft's First Ground for Relief should be dismissed on the merits or as procedurally defaulted.

**Ground Two: Self Defense and Defense of Another**

In his Second Ground for Relief, Shoecraft claims the trial court erred in rejecting his defenses that he was acting in defense of himself and of his companion in the drug deal, Damon Glenn. Shoecraft presented this claim to the Second District Court of Appeals as essentially a claim that the trial judge's finding on self defense and defense of another was against the manifest weight of the evidence. *Shoecraft*, 2018-Ohio-3920, ¶ 30. Noting that these two defenses are affirmative defenses under Ohio on which the defendant bears the burden of proof by a preponderance of the evidence, the Second District decided:

> **[\*P35]** In the instant case, the record establishes that, at the time Raglin attempted to drive away with the methamphetamine without paying, Shoecraft and Glenn were standing along the driver's side of the vehicle. Shoecraft stood on the street partially inside the open driver's door next to Raglin, and Glenn stood on the driver's side of the vehicle in the area near the front wheel. No one was standing in front of the vehicle when Raglin began to accelerate out of the parking spot. Shoecraft argued at trial that he acted in self-defense and in defense of another because he believed that he and Glenn were in danger of being run over by Raglin and killed.

**[\*P36]** Upon review, we conclude that the trial court did not err when it rejected Shoecraft's affirmative defenses of self-defense and defense of another. Here, the trial court could have reasonably found that neither Shoecraft nor Glenn was ever in imminent danger of death or great bodily harm. By their own admission at trial, Shoecraft and Glenn were standing along the driver's side of the vehicle when Raglin attempted to drive away. Raglin was not driving towards the two men. Rather, Raglin was driving away from Shoecraft and Glenn. Although Raglin turned the steering wheel hard to the left in order to exit the parallel parking space, Shoecraft and Glenn were never in position where the vehicle could have run them over.

**[\*P37]** The evidence adduced at trial also failed to establish that Shoecraft had an objectively reasonable belief that using deadly force was the only means of escaping the questionable danger posed by Raglin attempting to drive away from the men. Glenn testified that after being "nudged" out of the way by Shoecraft, he was able to safely run away. As previously stated, Shoecraft admitted during his testimony that he could have run away from the scene to avoid any danger, but he chose to stand and fire his weapon at Raglin's vehicle. Additionally, the bullet that hit Raglin in the back of the neck and ultimately killed him was apparently fired by Shoecraft through the rear windshield of the vehicle. At this point, Shoecraft was ostensibly well behind the vehicle and in no danger of being hit.

*Shoecraft*, 2018-Ohio-3920.

A federal habeas corpus court can only grant relief from unconstitutional convictions. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Barclay v. Florida,* 463 U.S. 939, 957-58 (1983). An argument that a conviction is against the manifest weight of the evidence does not state a claim that the conviction violates the United States Constitution. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986). Shoecraft's Second Ground should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Three:  Failure to Accept Voluntary Manslaughter as Lesser Included Offense**

In his Third Ground for Relief, Shoecraft claims there was sufficient evidence of the provocation he was under to justify a conviction for voluntary manslaughter instead of murder.  In his closing argument trial counsel asked the trial judge to consider the lesser included offense of voluntary manslaughter.  *Shoecraft*, 2018-Ohio-3920, ¶ 43.  The Second District rejected this claim because it was inconsistent with Shoecraft's own testimony that he shot Raglin out of fear and fear is insufficient under Ohio law to constitute the sudden passion or fit of rage necessary to reduce murder to voluntary manslaughter.  *Id.* at ¶¶ 47-48.

As with the Second Ground for Relief, the appellate court here was evaluating the trial judge's weighing of the evidence.  There is no federal constitutional requirement that a jury or trial judge consider a lesser included offense in a non-capital case.  *McMullan v. Booker*, 761 F.3d 662, 666 (6th Cir. 2014); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990).  Shoecraft's Third Ground for Relief should also be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Four:  Error in Sentencing on Allied Offenses of Similar Import**

In his fourth assignment of error, Shoecraft argued on direct appeal that the trial court erred when it failed to merge his convictions for murder (Raglin), felonious assault (Houchins), carrying a concealed weapon, discharge of firearm on or near prohibited premises, having a weapon while under disability, and trafficking in drugs.  *Shoecraft*, 2018-Ohio-3920, ¶ 51.

The Second District reviewed this claim only for plain error because Shoecraft made no

contemporaneous objection at trial. *Id.* at ¶ 56. Plain error review constitutes an enforcement of the contemporaneous objection rule, not a waiver of it, and that rule is an adequate regularly enforced state procedural rule whose violation constitutes a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010)(*en banc)*; *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Shoecraft's Fourth Ground for Relief should be dismissed as procedurally defaulted.


**Ground Five:  Insufficient Evidence on Assault on Houchins**


In his Fifth Ground for Relief, Shoecraft claims there was insufficient evidence to convict him of felonious assault on Amanda Houchins. Petitioner presented this as his fifth assignment of error on direct appeal. The Second District noted that Shoecraft admitted knowing Houchins was in the front passenger seat. *Shoecraft*, 2018-Ohio-3920, ¶ 74. "As Raglin drove away without paying for the methamphetamine, Shoecraft fired at least seven shots from a handgun at Raglin's vehicle. However, Shoecraft argues that because he only intended to shoot at Raglin, he could not be convicted for felonious assault against Houchins." *Id*. The Second District continued

> [*P76] As in the Phillips case, we apply the specific definition of
> felonious assault as being directed to "another," thus potentially
> encompassing both of the occupants in the car, Raglin and
> Houchins. Furthermore, it is reasonable to assume that one who
> fires multiple shots from a gun into a moving car with two occupants
> knows that there is a "significant possibility" that more than one

person could suffer physical harm as a result of his conduct. Even if Shoecraft's stated intent was to shoot only Raglin, given Houchins's close proximity to Raglin inside the front passenger compartment of the vehicle, it was not unreasonable for the trial court to conclude that Shoecraft's conduct also constituted an attempt to cause physical harm to Houchins by means of a deadly weapon. Accordingly, Shoecraft's conviction for felonious assault against Houchins was supported by sufficient evidence and was not against the manifest weight of the evidence.

*Shoecraft*, 2018-Ohio-3920.

Another way to understand the same point is the concept of transferred intent. If Shoecraft intended to shoot Raglin but fired his weapon in such a way that he could readily have shot Houchins, for instance, by repeatedly shooting at the rear end of a car moving rapidly away from him, where he knew there was someone in the front passenger seat, that is sufficient under Ohio law. See *Bradshaw v. Richey*, 546 U.S. 74, 76-78 (2005).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is

state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the AEDPA, two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008), quoting *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).

Because the Second District's decision on the fifth assignment of error is not an objectively unreasonable application of *Jackson*, it is entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Five should therefore be dismissed on the merits. Because Shoecraft procedurally defaulted his opportunity to present this claim to the Supreme Court of Ohio, it should also be dismissed as procedurally defaulted.

**Ground Six: Ineffective Assistance of Trial Counsel: Failure to Retain a Cultural Expert**

In his Sixth Ground for Relief, Shoecraft claims he received ineffective assistance of trial counsel when his trial attorney did not retain a cultural expert who could have testified that Shoecraft's shooting of Raglin was justified or at least the seriousness could be mitigated because Raglin felt threatened enough to shoot when a white suburbanite might not have.

When he filed his Application for Reopening under Ohio R. App. 26(B), Shoecraft raised the related claim that he received ineffective assistance of appellate counsel when his appellate attorney did not accuse the trial attorney of ineffective assistance in this respect (State Court Record, ECF No. 7, PageID 280-84).  The gravamen of Petitioner's claim is

> Here in the case at bar, appellant submits that appellate counsel should have raised that trial counsel for the defense was ineffective in not presenting a cultural expert on behalf of the defendant to tsetify [sic] due to the obvious lack of understanding both the state prosecutor and judge displayed concerning black mens [sic] behavior, and thought processes under circumstances of being attacked in a poor enviroment [sic] where violence is the norm.
>
> Appellant submits that it is obvious that urban men raised in conditions such as those appellant was raised in would act completely different than white men raised in the suburbs, as the two enviroments [sic] see the world througe [sic] different points of views. [A]ppellant submits that because such a lack of a cultural expert being presented to the trial court, and the trial court judge['s] narrow view of black culture, the judge could not understand the appellant's reactions to the t[h]reat he was under and that made all the difference between the murder charge appellant was convicted of, and the self-defense that was claimed as his df~ense [sic], as appellant was acting under the heat of passion, and the fit of rage in defense of his life, and the life of another.

*Id.* at PageID 281.  The Second District rejected this claim, holding particularly "there is absolutely nothing in *Shoecraft I* [the direct appeal decision] evidencing a cultural bias or any failure to understand black men as Shoecraft asserts."  (Decision and Entry, State Court Record, ECF No. 7, PageID 264.)

Shoecraft has not cited any Supreme Court authority for the proposition that failure to hire a cultural expert to testify as he hypothesizes constitutes deficient performance.  In fact, he has not cited any cultural expert who would be prepared to testify that a black urban-raised drug dealer who has just been ripped off by a customer would feel more in fear of his life from having the

customer speed away than a white suburban-raised drug dealer would feel in the same circumstances. Thus the Second District's decision is entitled to deference on the merits.

This claim is also procedurally defaulted. Since it would depend on presenting some proposed testimony from a cultural expert that was not part of the direct appeal record, it was required to be presented in Shoecraft's post-conviction petition; since it was not, it is barred by procedural default.

**Shoecraft's Reply**

As noted above, Shoecraft did not file his Traverse (Reply) on time, so the Court could simply put it to one side. However, the document does not really respond to the Return of Writ by supporting the claims Shoecraft has already made.

Instead, it begins by making a lengthy argument about forensics (ECF No. 14, PageID 889-92). Shoecraft's argument is that the statement of facts by the Second District on direct appeal is in error. The Magistrate Judge fails to see how that is material to the case. It is undisputed that Raglin attempted to drive away without paying the agreed purchase price of $600 for the meth Shoecraft furnished him. It is undisputed that Shoecraft, and only Shoecraft, fired seven shots at the fleeing car. It is undisputed that one of those shots lodged in Raglin's brain and killed him. While a forensics expert might give a clearer explanation of trajectories, it is completely unclear how that would be helpful.

In the second part of his Reply, labeled "Cause and Prejudice," Shoecraft complains of how state rules and procedures impede the presentation of constitutional claims. For example, he complains that Ohio has "no adequate hearing process where a state prisoner can have his

16

constitutional claims reviewed on their merits when the prisoner himself first learns of or discovers the claims himself." (ECF No. 14, PageID 893.) Ohio does have time limits on filing appeals, post-conviction relief petitions, and 26(B) applications. If Shoecraft's suggestion is that those time limits are unconstitutional, the place to raise that claim is in a civil rights action under 42 U.S.C. § 1983; they cannot be litigated in a habeas corpus action. *Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979).

Shoecraft asserts he discovered several new constitutional claims when he reviewed the State Court Record and asks to amend his Petition to assert those claims now (Reply, ECF No. 14, PageID 894). He asserts ineffective assistance of appellate counsel in his appellate attorney's failure to file for discretionary review in the Supreme Court of Ohio. However, the right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt,* 417 U.S. 600 (1974). Shoecraft's first appeal of right was in the Second District Court of Appeals, and he had appointed counsel in that proceeding. Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)(per curiam)(observing where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner,* 1997 U.S. App. LEXIS 6115, *5 (6th Cir. Mar. 27, 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Shoecraft also asserts ineffective assistance of appellate counsel in his appellate attorney's failure to claim ineffective assistance of trial counsel for failure to hire a forensics expert. As noted above, it is completely unclear to the Magistrate Judge how a forensics expert would have made any difference in the outcome.

Finally, Shoecraft asks us to grant him a conditional writ so that he can move to reopen his direct appeal under Ohio R. App. P. 5(B). However, the granting of a conditional writ would require a finding that Shoecraft's constitutional rights were violated, and no such violation has been proved.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 15, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.